162 So. 137

## WITT v. STATE.
### 6 Div. 809.

Court of Appeals of Alabama.
June 11, 1935.

J. Reese Murray, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., for the State.

RICE, Judge.

Sandy Witt, Sr., and Katie Witt were husband and wife. Katie, whether at the time of their marriage a widow, or not, does not appear, had a daughter, Annie Mae Green, of uncertain age, but who was old enough to have "men friends." Katie was Sandy's second wife; and, when he married her, and brought her into his home, which he already owned, Annie Mae came along.

Apparently things did not go so pleasantly; and for some four years prior to the events which constitute the subject of this opinion, Sandy had occupied, alone, one side of the home, which was a six-room affair, with two separate front entrances, a partition separating the three rooms on one side from the three on the other, while Katie and Annie Mae occupied the remainder.

As things did not go so pleasantly, neither did they, according to Sandy's way of thinking, go properly; for it is reasonably clear, allowing for conflicts in the testimony, that Sandy had complained, continued to complain, of the kind of "company" or "conduct" that characterized Katie's side of the house.

Upon Sunday afternoon September 9, 1934, affairs reached a crisis. Katie and Annie Mae had "company"; Sandy was displeased. While he denies using the language ascribed to him, yet it is apparent that he did or said something that stirred the anger of Katie. One of Katie's visitors on that occasion testifies that Sandy, attracting the attention of the party of four or five, of which Katie and the witness were a part at the time, and all of whom were laughing and talking, used the following language, to wit: "All of them (you) whores and whore mongers and syndicating damn niggers get out from over there."

According to the above witness, Katie responded to this very insulting address by saying (all this talk, as we gather, taking place through the partition): "It's not a thing but just home people in here * * * come in, Mr. Witt, and see for yourself. Not anyone here but the home folks." Whereupon Katie conducted (after letting him in at the door) Sandy through her part of the house, remarking: "Mr. Witt, every Sunday you raises Hell over here."

From this point on, the testimony on behalf of the state and the defendant (appellant) has vital conflicts. But it clearly appears, without conflict, that Sandy left the house, without inflicting, or attempting to inflict, bodily harm upon Katie; that he left, in fact, pursued by Katie (accompanied by one of her "men friends"); that he went the distance of some four city blocks, all the while being followed by Katie and her man friend, to the back yard, or door, of his brother's home; that he went into the back of his brother's home, procured within said home a single-barreled shotgun, returned to his brother's back (screened) porch and fired a single shot at Katie, who was just outside the back gate, some fifteen or twenty feet from Sandy, killing her. True, she was

shot in the back, just below a shoulder blade, but Sandy's explanation of that, which seems to be undisputed, is, that just as he fired, she whirled around. Whether or not Katie, shown preponderantly to be "chasing" Sandy, had a pistol at the time, is disputed in the testimony; the defendant's testimony tending very strongly to show that she did have one.

However it all was, there was ample testimony that Katie, both on this day, and on prior days, had stated to Sandy, and, inferentially, to others in his hearing, that she was going to kill him. In this state of the testimony he asked, on his trial in the court below, that the court give to the jury the following written charge, to wit:

"It is not necessary, under the evidence in this case, that defendant should have been actually in danger of death or great bodily harm at the time he killed Katie Witt, or that retreat would have really increased his peril, in order for him to be justified in shooting Katie Witt. He had the right to act on the appearance of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of Katie Witt in the light of any threat that the evidence proves Katie Witt to have made against the defendant. If the circumstances attending the killing were such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believed such to be the case, then he had the right to shoot Katie Witt in his own defense, although as a matter of fact he was not in actual danger, and retreat would not have endangered his personal safety; and if the jury believed that the defendant acted under such conditions and circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty is on the State, and, if not shown, the jury should acquit the defendant.

"Refused.

"Wheeler, Judge."

The learned trial judge gave, at defendant's (appellant's) request, a number of written charges. These, in connection with his oral charge, seem to have covered practically all phases of the applicable law, with the single exception of the matter of "threats" sought to be explained to the

jury in the charge which we have quoted. We must hold the refusal of this charge to be reversible error. It is indistinguishable, if not in letter and form, certainly in substance, from written charge two dealt with in the opinion in Glass v. State, 201 Ala. 441, 78 So. 819. It was there held to be a good charge. It cannot be said to be abstract in the instant case. And see Buffalow v. State, 219 Ala. 407, 122 So. 633.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

BRICKEN, P. J., dissents.